<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

CURTIS THROWER,            :
                             :   Civil Action No. 09-4296 (FSH)
            Plaintiff,      :
                             :
                             :
             v.              :   **OPINION**
                             :
OSCAR ALVIES, et al.,        :
                             :
            Defendants.     :

**APPEARANCES:**

      CURTIS THROWER, Plaintiff <u>pro</u> <u>se</u>
      Hudson County Correctional Center
      35 Hackensack Avenue
      South Kearny, New Jersey 07032

**HOCHBERG**, District Judge

     Plaintiff, Curtis Thrower, a state inmate currently confined at the Hudson County Correctional Center in South Kearny, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

Plaintiff, Curtis Thrower ("Thrower"), brings this civil action against the following defendants: Oscar Alvies, Administrator at Hudson County Correctional Center ("HCCC"); Dr. I, HCCC Medical Director; Thomas Degise, Hudson County Executives, et al.; Christ Hospital; Sgt. Darlene Camady; and Officer Santiago, HCCC Internal Affairs.  (Complaint, Caption and ¶ 5b).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Thrower alleges that, on July 31, 2009, he was sexually assaulted by two unknown inmates at approximately 11:30 a.m. Thrower was preparing to go to the shower when he was attacked from behind.  One inmate grabbed plaintiff's upper torso while the other pulled down his underwear.  Thrower tried to fight his attackers, but was unable to free himself from their hold.  He was then pushed onto a lower bunk and states that both inmates then penetrated his anus.  Each rape lasted about two to four minutes.  The inmates then left the cell.  Plaintiff states he lay still for about five minutes, trying to recover and compose

himself.  He noticed blood and other fluids on the sheet.  He then got dressed and went to the officer on the wing to report the crime.

While Thrower was talking to the officer, he heard someone yell, "snitches get stitches."  When the officer told plaintiff that he would have to speak with the housing sergeant, a group of inmates started to gather and say that the "homo" is calling for a sergeant.  Defendant, Sgt. Camady, arrived, spoke to the officer, and then took the inmate "tier rep" to the "sallyport." After several minutes, the officer came back with the tier rep and locked him in his cell and told plaintiff to pack his stuff. While Thrower was packing his stuff, Sgt. Camady returned and plaintiff asked the sergeant why she did not ask him what had happened.  She told plaintiff to just "pack your shit."  Thrower was then moved to D-100 unit where new inmates are housed.

Once plaintiff arrived at the new unit, Sgt. Orlik came to see plaintiff and took him to the medical unit.  Sgt. Orlik informed the medical staff about the rape.  Thrower was examined while he waited for the medical director.  The doctor cleaned plaintiff's anal area.  The medical staff told plaintiff to remove all of his clothing, and issued plaintiff new clothes. Thrower was told to sit in the waiting are to see mental health. He was then seen by Dr. Sanchez, who told Thrower that he would be taken to Christ Hospital.

3

Upon plaintiff's arrival at Christ Hospital, the nurse informed the officer that she would have to call the Prosecutor's Office, and the officer said that the jail had already called. Thrower was then taken to an exam room, where a doctor examined him.  A nurse then came in and told Thrower that she would do a rape kit.  She asked plaintiff a series of questions and began the rape kit.  About halfway through the kit, defendant, Investigator Santiago, came in.  When the rape kit was finished, plaintiff was told to put on his clothes.  After plaintiff was dressed, Santiago stated to him: "You know since you're an openly gay homosexual, it can be said that you had sex with these inmates for soups and canteen, and when they didn't pay you, you yelled rape."  Plaintiff was insulted and refused to answer any questions unless it was from the Prosecutor's Office.  Santiago then went into the office where the nurse was, and they spoke for about ten minutes.  The nurse asked plaintiff if he wanted any secondary infection medication, to which plaintiff replied, yes. Another nurse came over with a needle, a bottle of medication and some aftercare instructions for sexual assault victims.  After plaintiff got his needle and was told that he would get medication for 5 days at the jail, he states that Investigator Santiago told Officer Peers to take plaintiff back to the jail. Officer Peers asked if plaintiff wanted to talk to the Prosecutor's Office, but Santiago said "no".

Thrower was returned to jail and placed in a cell where he remained for 5 days without any counseling or his secondary infection medication.  Then, on August 6, 2009, plaintiff was seen by Dr. Hanah, who counseled him about the rape briefly.  The doctor allegedly told plaintiff that nothing was his fault and that "medical handled everything wrong."  On August 14, 2009, plaintiff went to medical because he had a rash from the rape. He was given an anti-fungal creme.

On August 7, 2009, and on repeated occasions afterward when his rash flared, Thrower requested to speak with someone in administration because he was concerned about several officers talking openly about what had happened to plaintiff.  Plaintiff was told to "stop making a big deal over nothing, you probably enjoyed it anyway."  Thrower also was informed by his parents that they had called the Prosecutor's Office and the County Executive's office and were told that neither office had been informed about plaintiff's sexual assault at HCCC.

Plaintiff seeks $8.7 million in damages.  He also seeks injunctive relief, namely, that the HCCC be required to set standards to treat inmate victims of sexual assault with respect.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court refined this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Fed.R.Civ.P. 8(d).

7

proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 2009 WL 2501662, *5.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the

_____

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at
> 1949-50]. This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Thrower brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  Denial of Medical Care Claim

It would appear that plaintiff may be asserting a denial of medical care claim because he was not given the medication prescribed by the hospital after he was returned to jail. Thrower does allege that he developed a rash due to the lack of medication that had been prescribed.  He also seems to complain about the lack of respect he received from the correctional and medical staff at HCCC concerning the mental and emotional impact of the rape, and that he was not seen by a psychologist until six days after the event.

It is not clear from the Complaint whether plaintiff is a convicted inmate or a pretrial detainee.  An offender search on the NJDOC website shows that plaintiff was paroled in November 2008, so his present incarceration may be pursuant to a parole violator warrant.  Therefore, this Court will review the claim under both the Fourteenth Amendment standard and the Eighth Amendment standard.

For pretrial detainees, denial of medical care claims are considered under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment.  See City of Revere

11

v. Massachusetts General Hospital, 463 U.S. 239, 243-45
(1983)(holding that the Due Process Clause of the Fourteenth
Amendment, rather than the Eighth Amendment, controls the issue
of whether prison officials must provide medical care to those
confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d
150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9
(3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County
Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346
n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See
also Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084
(3d Cir. 2005)(unpubl.)("the proper standard for examining such
claims is the standard set forth in Bell v. Wolfish, ...; *i.e.*
whether the conditions of confinement (or here, inadequate
medical treatment) amounted to punishment prior to adjudication
of guilt....") (citing Hubbard, 399 F.3d at 158).  In Hubbard,
the Third Circuit clarified that the Eighth Amendment standard
only acts as a floor for due process inquiries into medical and
non-medical conditions of pretrial detainees.  399 F.3d at 165-
67.

        As noted above, it would appear that plaintiff is alleging
that he was denied proper medical care when prescribed medication
to prevent sexually transmitted diseases ("STD") was not provided
for him at jail.  Thrower seems to allege that this denial of
prescribed medication was without any medical justification.
Thus, accepting these allegations as true at this preliminary

screening stage, as this Court is required to do, plaintiff may be able to support a claim that the inaction and apparent refusal to treat plaintiff by defendant, Dr. I, the medical director at HCCC's, may have been excessive in relation to any stated purpose of jail security and administration, and a court may infer that it is intended as punishment and retaliation.  See Hubbard v. Taylor, 399 F.3d 150, 158-63 (3d Cir. 2005); Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Accordingly, this claim against Dr. I. will be allowed to proceed at this time.

The claim against Dr. I. also appears to satisfy the Eighth Amendment standard.  The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,

14

"mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v.

O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, plaintiff alleges that he was prescribed medication to prevent STDs and other secondary infections, but was never given the medication as prescribed, ultimately developing a rash. There appears to be no medical or other legitimate justification for denying the prescribed treatment.  Therefore, where plaintiff has alleged that a prescribed medical treatment was denied for no reason, these allegations of facts may be sufficient at this early stage for plaintiff to show both serious medical need and deliberate indifference under Estelle.  Accordingly, this denial of medical care claim also should proceed under the Eighth Amendment standard at this time.

Plaintiff's allegations concerning the lack of follow-up psychological counseling, however, do not rise to the level of a constitutional deprivation under either the Eighth and Fourteenth Amendment standard.  Thrower admits that Dr. Hanah came to talk to him six days after the incident.  Further, while the staff's attitude towards plaintiff was cavalier considering the trauma he suffered, they did not actually deny him medical care. Therefore, any claim against medical staff or correctional officers alleging denial of medical care should be dismissed for failure to state a claim at this time.

B.  Retaliation

     Plaintiff's allegations also suggest that he may be asserting a claim of retaliation in violation of his First and Fourteenth Amendment rights.  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

     Based on the allegations set forth in the Complaint, if true, Thrower may be able to support a claim of retaliation.  He alleges that he has repeatedly asked to speak to someone in administration to complain about his treatment, but the officers have not forwarded his requests and ridicule and talk about him, mainly saying that plaintiff "probably enjoyed" the rape.

Defendant Santiago also thwarted plaintiff's request to speak to the Prosecutor's Office, and defendant Camady did not report the sexual assault and made no effort to send plaintiff to medical or mental health.  In addition, plaintiff alleges that defendant Alvies did nothing to find the inmates who sexually assaulted plaintiff, and would not report the matter to the Prosecutor's Office, despite plaintiff's and his family's requests.  Moreover, Alvies threatened plaintiff that he would transfer him to another jail if plaintiff continued to complain.  If these acts were taken or allowed to occur in retaliation against plaintiff for complaining about a sexual assault, a grievance that would constitute a constitutionally-protected activity, then this claim should be allowed to proceed at this early stage.  Therefore, the Court will allow the alleged retaliation claim to proceed at this time against defendants, Santiago, Camady and Alvies.

C.   Claim Against Defendant Degise

     Thrower also asserts a claim against Thomas Degise of the Hudson County Executives.  He alleges that Degise made no effort to ensure plaintiff's safety at HCCC and was "flippant" with his family when they called about the status of the sexual assault investigation.

     Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-

91, 694 (1978)(municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n. 16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the

policymaker can reasonably be said to have been deliberately indifferent to the need.'" <u>Natale</u>, 318 F.3d at 584 (footnote and citations omitted).

Plaintiff has alleged no facts suggesting that the sexual assault itself, or the limited investigation of the assault was the result of a policy or custom of the Hudson County Executive's office or Deglise himself.  To the contrary, it would appear that plaintiff may be alleging merely that the Hudson County Executive exercises "control" over the HCCC.  This is an allegation of vicarious liability that is not actionable under § 1983.

Moreover, Thrower's allegation that Deglise was "flippant" to his family when asked about the status of the investigation does not rise to the level of constitutional violation. Accordingly, plaintiff's claim against the Hudson County Executive, Mr. Deglise, will be dismissed without prejudice at this time.

D.  <u>Claim Against Christ Hospital and John and Jane Does</u>

While plaintiff names the Christ Hospital and John and Jane Does as defendants in the caption of his Complaint, he does not assert any allegations of wrongdoing by these defendants.  For this reason, the Complaint will be dismissed in its entirety as against these defendants at this time.

However, because Thrower may be able to allege facts of wrongdoing by these defendants, this Court will allow plaintiff

leave to amend his Complaint, pursuant to Federal Rule of Civil Procedure 15, to cure this deficiency.  Thrower should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

V.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed without prejudice with respect to defendants, Thomas Deglise, Christ Hospital and the John and Jane Doe defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), and 1915A(b)(1).  Plaintiff may seek leave to amend his Complaint to cure the deficiencies noted above, in accordance with Fed.R.Civ.P. 15.  Finally, plaintiff's claims asserting denial of medical care and retaliation in violation of his constitutional rights, as against defendant Dr. I., and defendants, Camady and Santiago,

respectively, will be allowed to proceed at this time.  An appropriate order follows.


                                        s/Faith S. Hochberg
                                        FAITH S. HOCHBERG
                                        United States District Judge
Dated: October 7, 2009