**NOT FOR PUBLICATION**                                        **CLOSED**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| CURTIS THROWER, | : |
| | : |
| Plaintiff, | : |
| | :     Civil No. 09-4296 (FSH) |
| v. | : |
| | :     **OPINION** |
| OSCAR AVILES, et al., | : |
| | :     Date: October 14, 2010 |
| Defendants. | : |
| | : |

---

**HOCHBERG, District Judge:**

This matter comes before the Court by way of the parties' Cross Motions for Summary Judgment.  The Court has reviewed the parties' written submissions pursuant to Fed. R. Civ. P. 78.

## I.      Factual Background

Plaintiff Curtis Thrower brings claims arising out of an alleged July 30, 2009 sexual assault committed against him in his cell at the Hudson County Correctional Center ("HCCC").  Defendant Oscar Aviles is HCCC Administrator.

In January 2009, Thrower was charged with shoplifting and possession and was released on bail.  When he failed to appear in response to a summons, Thrower was arrested and brought to HCCC, pending trial.

On July 30, 2009, Thrower submitted an "Inmate Request Form" seeking to be moved to a different tier of HCCC because other inmates had been "disrespectful" of him.

1

Thrower claims that on July 31, 2009 he was sexually assaulted in his cell by two unknown inmates.  He alleges that he was preparing to go to the shower when he was assaulted.  Thrower acknowledges that he did not yell or scream.  After the alleged assault, Thrower requested to speak to Defendant Sergeant Darlene Camady, who he claims was rude and disrespectful to him.  Sergeant Camady moved Thrower to a holding area where Thrower reported to other corrections officers that he had been sexually assaulted.  Thrower claims that while he was being moved, he was taunted by inmates who called him a "homo" and a "snitch."

Defendant Officer Samuel Santiago, an HCCC Internal Affairs investigator, reviewed the surveillance video from the morning of July 31, 2009 and concluded that no other inmates entered Thrower's cell during the relevant period.  Similarly, an investigator from the Hudson County Prosecutor's Office reviewed surveillance video of Thrower's cell and concluded that no one other than Thrower entered his cell for more than forty minutes before Thrower was escorted to the holding area.  Additionally, the investigator concluded that no one entered or exited the shower area during the relevant period.

After reporting the alleged assault, Thrower was taken to the HCCC infirmary, where he was seen first by an unidentified male physician's assistant and then by an unidentified male doctor.  Thrower claims the doctor told him to remove his clothes and then cleaned his anal area.  Defendant Dr. Helen Iberwiro, HCCC Medical Director, has stated, however, that the "Progress Note" from that day indicates Thrower was not given a medical examination and was instead referred to Christ Hospital for treatment.

Thrower was next seen by an HCCC psychologist, after which he alleges that he waited four hours before he was sent to Christ Hospital.   At the hospital, a nurse conducted a sexual

2

assault examination and, according to Thrower, prescribed medication to prevent infection.  Dr. Iberwiro claims that Thrower "did not receive secondary infection medication because no such medication was ordered by Christ Hospital because it was not medically necessary" because there "was no evidence of sexual assault."[1]  The examination done at Christ Hospital did not reveal evidence of sexual assault.

While at Christ Hospital, Thrower was also interviewed by Officer Santiago about the alleged assault.  Thrower claims that Santiago made the following comment: "You know since your [sic] openly homosexual it can be said that you sold your body for sex and when they didn't pay you yelled rape."[2]  Thrower alleges that he never spoke to Santiago again and that Santiago failed to investigate Thrower's allegations and fabricated statements included in his report.

Thrower returned to HCCC, where he stayed in the infirmary for five days.  He claims that during this time, he was not given the medication prescribed to him at Christ Hospital.  Thrower's medical records do indicate, however, that he was tested for various sexually transmitted diseases.

On August 14, 2009, after being returned to the general population of HCCC, Thrower was seen by Dr. Iberwiro to assess a rash in his genital area.  Thrower was given an anti-fungal cream, and the rash resolved within ten days.

In the weeks following the alleged assault, Thrower repeatedly asked to speak to a prosecutor.  On September 8, 2009, Thrower gave a recorded statement to a detective from the Hudson County Prosecutor's Office Special Victims Unit.  On September 30, 2009, an

---

[1]  Iberwiro R. 56.1 Stmt. ¶ 83.

[2]  Thrower July 26, 2010 Submission.  (Dkt. No. 81)

investigator from that office issued a report stating that, based on his review of the relevant

surveillance video, "it is evident no sexual assault occurred on this date, during the above stated

time period in any of the locations stated by Inmate Thrower.  Inmate Thrower is quite visible

throughout most of this time period and is not in distress and no one is seen in any way assaulting

him."[3]

## II.   Discussion

Thrower bring claims under 42 U.S.C. § 1983 for (1) violations of his Fourteenth

Amendment rights to medical care and to protection while in custody at HCCC; and (2)

retaliation in violation of the First and Fourteenth Amendments.

### A.   Standard of Review

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words,

"[s]ummary judgment may be granted only if there exists no genuine issue of material fact that

would permit a reasonable jury to find for the nonmoving party."  Miller v. Indiana Hosp., 843

F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most

favorable to the non-moving party.  Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d

Cir. 1994).  The judge's function is not to weigh the evidence and determine the truth of the

---

[3] The Hudson County Prosecutor's Office report is Exhibit I to the Certification of
Michael L. Dermody.  (Dkt. No. 87)

matter, but to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at

249.  "Consequently, the court must ask whether, on the summary judgment record, reasonable

jurors could find facts that demonstrated, by a preponderance of the evidence, that the

nonmoving party is entitled to a verdict."  In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829,

860 (3d Cir. 1990).[4]

"Where the plaintiff is a pro se litigant, the court has an obligation to construe the

complaint liberally."  Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  However, pro se

plaintiffs are not relieved of the obligation to set forth facts sufficient to survive summary

judgment. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Zilich v. Lucht, 981 F.2d 694,

695-96 (3d Cir. 1992).

### B.    Violations of Thrower's Fourteenth Amendment Rights

"[I]n evaluating the constitutionality of conditions or restrictions of pretrial detention that

implicate only the protection against deprivation of liberty without due process...the proper

---

[4] The party seeking summary judgment always bears the initial burden of production.
Celotex Corp., 477 U.S. at 323.  This burden requires the moving party to establish either that
there is no genuine issue of material fact and that the moving party must prevail as a matter of
law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an
essential element of an issue on which it bears the burden.  Id. at 322-23.  This burden can be
"discharged by showing ... that there is an absence of evidence to support the nonmoving party's
case." Id. at 325.  Once the party seeking summary judgment has carried this initial burden, the
burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must
demonstrate facts supporting each element for which it bears the burden, thus establishing the
existence of a "genuine issue of material fact" justifying trial.  Miller, 843 F.2d at 143; accord
Celotex Corp., 477 U.S. at 324.  The nonmoving party "must do more than simply show that
there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at
587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Further,
summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is
not significantly probative."  Anderson, 477 U.S. at 249-50.

inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law."[5] Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

### 1.    Failure to Provide Medical Care

"[A] pre-trial detainee's claim of inadequate medical treatment [is evaluated] under the Eighth Amendment standards articulated in Estelle v. Gamble, 429 U.S. 97 (1976)." Hubbard, 399 F.3d at 166.  In Estelle, the Supreme Court set forth two requirements for stating such a claim: (1) "deliberate indifference on the part of the prison officials" and (2) "serious" medical needs on the part of the prisoner.  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

"The Third Circuit has described a 'serious medical need' as 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'  In addition, a court may consider the effect on the plaintiff if the requested treatment is denied or delayed." Christy v. Robinson, 216 F. Supp. 2d 398, 413 (D.N.J. 2002) (quoting Lanzaro, 834 F.2d at 347).

"Deliberate indifference may be displayed in a myriad of ways, such as where an official '(1) knows of prisoner's need for medical treatment but intentionally refuses to provide it; (2)

---

[5]  "In order to determine whether the challenged conditions of pre-trial confinement amount to punishment, '[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose . . . and whether it appears excessive in relation to [that] purpose . . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Hubbard, 399 F.3d at 158 (quoting Bell, 441 U.S. at 538-39).

delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended [medical treatments].'" Christy, 216 F. Supp. 2d at 413 (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

"Although prison systems have a duty to provide prisoners with adequate medical care, the law is clear that simple medical malpractice is insufficient to present a constitutional violation. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

Thrower's claim that he was not provided with adequate medical care is based on the following allegations: (1) that after the alleged sexual assault, he was told to remove his clothes and was examined by an unnamed doctor at HCCC; and (2) that Dr. Iberwiro and other medical professionals working in the HCCC infirmary did not provide him the anti-infection medication he claims was prescribed at Christ Hospital, causing a rash.

A claim for failure to provide medical care cannot be premised on the allegation that Thrower was told to remove his clothes and was examined following the alleged assault because no serious medical need is at issue.   Thrower does not claim – nor could he – that he suffered any pain or other medical injury as a result of removing his clothes and having a doctor examine him.  Accordingly, this allegation cannot form the basis for a failure to provide medical care claim.[6]  See Lanzaro, 834 F.2d at 347 (finding that the serious medical need may be found where

_____

[6]  Thrower repeatedly argues that the examination by HCCC infirmary staff constitutes a failure to properly investigate his allegations of sexual assault.  Such a claim is not cognizable under § 1983.  See Palmer v. Taylor, No. 06-576 (SLR), 2007 U.S. Dist. LEXIS 29441, at *6 (D. Del. Apr. 19, 2007) ("[T]he failure to investigate a grievance does not raise a constitutional issue.") (citing Hurley v. Blevins, No. Civ. A. 6:04CV368, 2005 U.S. Dist. LEXIS 38514) (E.D. Tex. Mar. 28, 2005)); Scantling v. Vaughn, No. 03-0067 (MAM), 2004 U.S. Dist. LEXIS 1995, at *27 n. 9 (E.D. Pa. Feb. 12, 2004) ("Failure to investigate after an alleged constitutional

denial of care results in "unnecessary and wanton infliction of pain," or "suffer[ing of] a life-long handicap or permanent loss").

Nor can Thrower's failure to provide medical care claim be sustained on the theory that he was denied anti-infection medication as the record is devoid of evidence that Dr. Iberwiro or any other member of the HCCC staff acted with "deliberate indifference" toward Thrower's health.

Thrower adduces no evidence to support his assertion that he was given a prescription for antibiotics at Christ Hospital.  The "Aftercare Instructions" issued to Thrower by Christ Hospital indicate that infection "usually" does not result from sexual assault and that antibiotics are used "sometimes" to prevent infection.[7]  Dr. Iberwiro has stated that because there were no indicators of sexual assault, antibiotics were not "medically necessary."[8]  While Thrower was not given antibiotics by HCCC's medical staff, he was tested for sexually transmitted diseases, as suggested in the "Aftercare Instructions."  Furthermore, there is no evidence that the rash for which Thrower was treated on August 14, 2009 was connected to the alleged sexual assault, nor that he was inadequately treated for that rash.  Indeed, by Thrower's own admission, he was prescribed an anti-fungal cream, and the rash cleared up within ten days.

Based on the evidence in the record regarding the medical treatment Thrower received, no reasonable fact finder could conclude that Dr. Iberwiro or other HCCC medical staff acted with

---

violation is not actionable under § 1983.") (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[7]  Iberwiro Submission, Ex. E (Dkt. No. 79)

[8]  Iberwiro Submission, Ex. F (Dkt. No. 79)

deliberate indifference toward Thrower's health after the alleged sexual assault.

### 2.     Failure to Protect

The protections of the Eighth Amendment "'establish a floor of sorts'" for the level of protection to which pre-trial detainees are constitutionally entitled.  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).

"An Eighth Amendment claim against a prison official must meet two requirements: (1) 'the deprivation alleged must be, objectively, sufficiently serious;' and (2) the 'prison official must have a sufficiently culpable state of mind.'"  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Specifically, the prison official must have acted with "deliberate indifference."  Beers-Capitol, 256 F.3d at 125.

"To be liable on a deliberate indifference claim, a defendant prison official must both 'know[] of and disregard[] an excessive risk to inmate health or safety.'" Id. at 133 (quoting Farmer, 511 U.S. at 837).

Thrower claims that Defendants failed to protect him by not reassigning him to a different tier after he had encountered problems with other inmates.  The only evidence in the record to support this claim is Thrower's July 30, 2009 "Inmate Request Form," in which Thrower seeks to be relocated because other inmates had been "disrespectful" of him.[9]  This form – filed only one day before the alleged sexual assault – speaks only generally of Thrower's having a problem with other inmates and makes no mention of any physical or sexual threat.  It is insufficient to

---

[9]  The "Inmate Request Form" is Exhibit C to the Certification of Michael L. Dermody. (Dkt. No. 87)

demonstrate that Defendants knew of a serious risk to Thrower's safety and disregarded it.[10]  See

Beers-Capitol, 256 F.3d at 133.

### C.     Retaliation in Violation of the First and Fourteenth Amendments

"Retaliation for the exercise of constitutionally protected rights is itself a violation of

rights secured by the Constitution ...."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).

"To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in

constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action

'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and

(3) the protected activity was a substantial or motivating factor in the state actor's decision to

take adverse action."  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v.

Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Thrower argues that he was denied a proper investigation into the alleged sexual assault

in retaliation for claiming he had been assaulted.

The parties do not dispute that Thrower engaged in constitutionally-protected activity

when he complained about the alleged assault to HCCC officials.  Indeed, prisoners have a First

Amendment right to make use of prison grievance systems.  See Mitchell v. Horn, 318 F.3d 523,

---

[10]  While the Eighth Amendment provides a floor for the level of protection due to pre-trial detainees, "'no determination has as yet been made regarding how much more protection unconvicted prisoners should receive'" than convicted prisoners.  Fuentes, 206 F.3d at 344 (quoting Kost, 1 F.3d at 188 n.10).  Even assuming that Thrower – a pre-trial detainee at the time of the events in question – was entitled to a higher level of protection than that accorded under the Eighth Amendment, there is no evidence in the record to suggest that Defendants' failure to immediately respond to Thrower's request to be moved would constitute "punishment prior to an adjudication of guilt in accordance with law."  See Hubbard, 399 F.3d at 158.  Accordingly, the record does not support Thrower's claim for a violation of his Fourteenth Amendment right to protection.

530 (3d Cir. 2003).

However, Thrower has failed to set forth any facts that might establish the second element of a retaliation claim, that he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  Specifically, Thrower has not offered evidence to support his allegation that the investigation conducted was inadequate.[11]  Officer Santiago interviewed Thrower, as did a detective from the Hudson County Prosecutor's Office Special Victims Unit.  Both Santiago and an investigator from the Prosecutor's Office also reviewed surveillance video, finding no evidence that Thrower had been assaulted.  Additionally, the nurse who examined Thrower at Christ Hospital did not find any signs of sexual assault.

Thrower's claim that the investigation of the alleged assault was inadequate is premised only on his assertion to that effect.  While Thrower claims that a review of the surveillance video of his cell from July 31, 2009 would establish that he was assaulted, he fails to address either of the reports to the contrary.  Because no question of material fact exists as to whether the investigation was so inadequate as to constitute "adverse action," summary judgment must be granted for Defendants on Thrower's retaliation claim.[12]

---

[11]  Defendants are due some deference as to how the investigation was conducted.  See Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) ("[D]ecisions of prison administrators are entitled to great deference....Thus, 'prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

[12]  Thrower also alleges that Defendants Camady and Santiago made derogatory comments about his sexuality.  To the extent Thrower is alleging that these comments were made in retaliation for his complaint about the sexual assault, summary judgment would also be granted for Defendants.  First, Defendant Camady's alleged statements were made before Thrower complained of the assault, so they cannot be the basis for a retaliation claim.  Second, any such comments were not sufficiently adverse to deter Thrower from exercising his

III.   **Conclusion**

No reasonable jury faced with the record before the Court could find for Thrower on the claims he has asserted in this action.  Accordingly, Defendants are entitled to judgment as a matter of law.

**THEREFORE IT IS** on this 14th day of October, 2010,

**ORDERED** that the Motion for Summary Judgment filed by Defendant Dr. Helen Iberwiro  is **GRANTED**; and it is further

**ORDERED** that the Cross-Motion for Summary Judgment filed by Defendants Oscar Aviles, Sergeant Darlene Camady and Officer Samuel Santiago is **GRANTED**; and it is further

**ORDERED** that the Motion for Summary Judgment filed by Plaintiff Curtis Thrower is **DENIED**; and it is further

**ORDERED** that this case is **CLOSED**.

The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 79, 81, 87) and to close the case.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

constitutional rights, as evidenced by his continued persistence in seeking an investigation of the assault, in seeking an interview with the Hudson County Prosecutor's Office and in filing this suit.